FILED BY _____ D.C.

05 SEP 30 AM 10: 42

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

MILTON SCOTT,                          )
                                       )
    Plaintiff,                     )
                                       )
v.                                     )   No. 04-2714 Ml/V
                                       )
ASSURANT EMPLOYEE BENEFITS,            )
f/k/a FORTIS BENEFITS INSURANCE        )
COMPANY,                               )
                                       )
    Defendant.                     )

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
## JUDGMENT AND DENYING IN PART AND GRANTING IN PART
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Plaintiff's Motion for Partial Summary
Judgment, filed November 3, 2004, and Defendant's Motion for
Partial Summary Judgment, filed January 13, 2005. Defendant
responded to Plaintiff's Motion for Partial Summary Judgment on
December 27, 2004. Plaintiff responded to Defendant's Motion for
Partial Summary Judgment on February 17, 2005,[1] and Defendant
filed a Reply on May 16, 2005. For the following reasons,
Plaintiff's motion for partial summary judgment is DENIED and
Defendant's motion for partial summary judgment is DENIED in part
and GRANTED in part.

---

[1] Plaintiff's Motion to Enlarge Time to respond to Defendant's
Motion for Partial Summary Judgment, filed February 14, 2005, is
hereby GRANTED.

-1-

This document entered on the docket sheet In compliance
with Rule 58 and/or 79(a) FRCP on 10-3-05



## I.  **Background and Relevant Facts**

The issue before the Court arises in the context of
Plaintiff's suit to recover benefits under a Group Long-term
Disability Insurance Policy (the "Policy") issued by Defendant to
Plaintiff's employer, Logistical Systems, Inc. ("LSI"), on
December 15, 2001.  Plaintiff alleges that on May 7, 2002, he
underwent a kidney transplant, and, as a result of his "renal
problems coupled with long standing cardiac conditions," he is
fully disabled within the meaning of the Policy and is physically
incapable of work.  (Compl. ¶ 7.)  From May 7, 2002, until April
4, 2003, Defendant paid Plaintiff long-term disability benefits
pursuant to the LSI's group insurance policy.  (<u>Id.</u> ¶ 8.)  On
April 9, 2003, Defendant informed Plaintiff by letter that no
further benefits would be paid.  (<u>Id.</u>)

On August 3, 2004, Plaintiff filed a complaint against
Defendant in the Circuit Court of Shelby County, Tennessee, for
the Thirtieth Judicial District at Memphis.[2]  Plaintiff alleges
that (1) Defendant materially breached its contract with
Plaintiff to provide long-term disability benefits in violation
of Defendant's duty of good faith and fair dealing; (2)
Defendant's "representation of services was unfair, deceptive

---

[2] Plaintiff filed his complaint against "Assurant Employee
Benefits, f/k/a Fortis Benefits Insurance Company."  Defendant
identifies itself as "Fortis Benefits Insurance Company ('Fortis'),
incorrectly sued as Assurant Employee Benefits, f/k/a Fortis Benefits
Insurance Company."

and/or unconscionable" in violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-109(a)(3) and (c)(4); and (3) Defendant refused in bad faith to pay Plaintiff within sixty days of "Plaintiff's legitimate request for payment of benefits" thereby rendering it liable for a twenty-five percent penalty, in addition to Plaintiff's loss and interest pursuant to T.C.A. § 56-7-105.  Plaintiff requests various forms of relief.  (Compl. ¶¶ 13,14,18,24.)

On September 10, 2004, Defendant removed the action to the District Court of the Western District of Tennessee,[3] alleging the existence of (1) diversity jurisdiction; and (2) federal question jurisdiction on the basis that Plaintiff's state-law claims are preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff filed an Amended Complaint on October 7, 2004, to allege a cause of action for improper denial of disability benefits under ERISA. On October 20, 2004, Defendant filed an Answer to the Amended Complaint and asserted several affirmative defenses, including that the Policy is an "employee welfare benefit plan" governed by ERISA.  On November 3, 2004, Plaintiff moved for partial summary judgment on Defendant's affirmative defense that Plaintiff's claim is governed by ERISA.  Plaintiff asserts that the Policy

---

[3] This case was originally assigned to Judge Bernice B. Donald. It was transferred to Judge McCalla on March 2, 2005.

falls within the Department of Labor's "safe harbor" regulations
and thus is not governed by ERISA.   Defendant responded on
December 27, 2004, moving for partial summary judgment on the
basis of ERISA preemption.[4]

## II.   Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law."   Fed. R. Civ. P. 56(c); see also Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986).   So long as the
movant has met its initial burden of "demonstrat[ing] the absence
of a genuine issue of material fact," Celotex, 477 U.S. at 323,
and the nonmoving party is unable to make such a showing, summary
judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353
(6th Cir. 1989).   In considering a motion for summary judgment,
"the evidence as well as all inferences drawn therefrom must be
read in a light most favorable to the party opposing the motion."
Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.

---

[4] On January 13, 2005, Defendant filed an Errata to correct the
title of its December 27, 2004, brief.   It also filed a motion that
should have been submitted contemporaneously with the brief.   As
corrected, Defendant's submission is titled Opposition to Plaintiff's
Motion for Partial Summary Judgment and Memorandum Brief in Support of
Fortis's Motion for Partial Summary Judgment.

1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary
judgment, the nonmoving party "must set forth specific facts
showing that there is a genuine issue for trial."  Fed. R. Civ.
P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159
F.3d 246, 250 (6th Cir. 1998).  A genuine issue of material fact
exists for trial "if the evidence [presented by the nonmoving
party] is such that a reasonable jury could return a verdict for
the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).  In essence, the inquiry is "whether the
evidence presents a sufficient disagreement to require submission
to a jury or whether it is so one-sided that one party must
prevail as a matter of law."  Id. at 251-52.

The standard of review for cross-motions of summary judgment
does not differ from the standard applied when only one party
files a motion.  Taft Broad. Co. v. U.S., 929 F.2d 240, 248 (6th
Cir. 1991).  "The fact that both parties have moved for summary
judgment does not mean that the court must grant judgment as a
matter of law for one side or the other; summary judgment in
favor of either party is not proper if disputes remain as to
material facts. Rather, the court must evaluate each party's
motion on its own merits."  Id. (citations omitted).  Thus, when
the court reviews cross-motions for summary judgment, it "must

-5-

evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." Westfield Ins. Co. v. Tech Dry, Inc., 336 F.3d 503, 506-07 (6th Cir. 2003).

**III.   Analysis**

The issue before the Court is whether Plaintiff's long-term disability insurance policy ("the Policy") is part of an "employee welfare benefit plan" governed by ERISA.  If the Policy is an ERISA plan, Plaintiff's claims under Tennessee state law are preempted and federal common law will apply.  Thompson v. American Home Assurance Co., 95 F.3d 429, 434 (6th Cir. 1996)(citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56-57 (1987)).  Title I of ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1) (1997).

The Sixth Circuit has developed a three-step factual inquiry to determine whether a benefit plan satisfies the statutory definition set out in § 1002(1).  Thompson, 95 F.3d at 434; see also Wausau Benefits v. Progressive Ins. Co., 270 F.Supp.2d 980, 986 (S.D. Ohio 2003).  First, a court must apply the Department

-6-

of Labor's "safe harbor" regulations to determine if the plan is
exempt from ERISA governance.  Thompson, 95 F.3d at 434.  A
benefit plan is exempt if it satisfies all four requirements of
the "safe harbor" regulations, which provide:

> [T]he terms "employee welfare benefit plan" and
> "welfare plan" shall not include a group or
> group-type insurance program offered by an
> insurer to employees or members of an employee
> organization, under which
>
> (1) No contributions are made by an employer or
> employee organization;
>
> (2) Participation in the program is completely
> voluntary for employees or members;
>
> (3) The sole functions of the employer or
> employee organization with respect to the
> program are, without endorsing the program, to
> permit the insurer to publicize the program to
> employees and members, to collect premiums
> through payroll deductions or dues checkoffs and
> to remit them to the insurer; and
>
> (4) The employer or employee organization
> receives no consideration in the form of cash or
> otherwise in connection with the program, other
> than reasonable compensation, excluding any
> profit, for administrative services actually
> rendered in connection with payroll deductions
> or dues checkoffs.

29 C.F.R. § 2510.3-1(j).  "A policy will be exempted under ERISA
only if all four of the 'safe harbor' criteria are satisfied."
Thompson, 95 F.3d at 435 (emphasis added).  The second step in a
court's factual inquiry is to determine if a "plan" exists by
examining "whether 'from the surrounding circumstances a
reasonable person [could] ascertain the intended benefits, the
class of beneficiaries, the source of financing, and procedures
for receiving benefits.'"  Id. (quoting Int'l Resources, Inc. v.

New York Life Ins. Co., 950 F.2d 294, 297 (6th Cir. 1991)).
Finally, a court must determine whether the employer "established
or maintained" the plan "with the intent of providing benefits to
its employees." Thompson, 95 F.3d at 435.

Before the Court are the parties' cross-motions for partial
summary judgment.  Plaintiff argues for partial summary judgment
on Defendant's affirmative defense that Plaintiff's state law
claims are preempted by ERISA.  Plaintiff asserts that the Policy
is not governed by ERISA because it falls within the Department
of Labor's "safe harbor" regulations, and, as such, his state law
claims are not preempted.  Defendant denies that the safe harbor
provisions apply and moves this Court to enter partial summary
judgment in its favor as to Plaintiff's state law claims, arguing
that they are preempted by ERISA.

### A. Safe Harbor Regulations

#### 1. Employer Contribution

The first criterion to examine under the safe harbor
regulation is whether LSI—the employer—contributed to the cost
of the Policy.  29 C.F.R. § 2510.3-1(j)(1).  The parties agree
that LSI paid its employees' insurance premiums under the Policy
from December 15, 2001, the date the coverage went into effect,

through sometime in April 2002.[5]  They also agree that Plaintiff paid the premiums starting in either April or May 2002.[6] According to Lentz Gatlin, LSI's Chief Financial Officer, LSI converted the plan from "100% employer paid" to "100% employee paid" in April of 2002.  (Letter from Lentz Gatlin to Craig Wright, Fortis Group Benefits, of 4/24/02, Mem. Supp. Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex B ("4/24/02 Gatlin Letter").)[7]

Plaintiff argues, however, that as construed under ERISA, he and the other LSI employees "constructively paid" the premiums throughout the entire period.  Defendant argues that, under the meaning of ERISA, LSI paid the premiums throughout the entire period.  Alternatively, Defendant claims, since LSI paid the

_____

[5] In his Complaint, Plaintiff asserted that "[i]rrespective of the group nature of the disability policy, [he] was covered outside the group and paid his own premiums." (Compl. ¶ 6.)  Later, however, Plaintiff stated that "[b]etween the period of December 15, 2001 and April 2002, LSI directly paid the insurance premiums for its salaried employees" and that he does not dispute the fact that LSI "initially paid the premiums for the Policy.  (Mem. Support Pl. Response Def.'s Mot. Partial Summ. J. at 3, 6.)

[6] In its Response to Plaintiff's Statement of Material Facts, Defendant states that it "admits that Scott paid the premiums required under the Policy after May 2, 2002."

[7] There is some evidence, however, that this change was never effected.  Defendant submitted an affidavit from Cheryl Wood, its Managing Team Risk Leader and an underwriter for the company, who states that LSI requested that Defendant amend the Policy to provide for employer payment of the premiums, but that Fortis never completed the amendment. (Wood Aff. ¶ 2.)  She goes on to note that the Policy "remains non-contributory, [however,] Fortis recently learned that LSI started deducting the required premiums from employees' pay in May 2002."  (Id.)

insurance premiums during the first several months, it "established" the Policy as an ERISA plan, and the fact that it may not have been "maintained" as an ERISA plan does not preclude a finding that LSI's insurance policy is an ERISA plan for the purposes of this litigation.  The Court will address the parties' contentions in turn.

Plaintiff argues that although LSI technically paid the cost of the premiums from December 15, 2001, through sometime in April 2002, these payments "may be seen as constructively paid by the employees themselves." (Mem. Support Pl.'s Response Def.'s Mot. Partial Summ. J. at 6.)  He claims that the only reason LSI did not deduct the cost of the premiums from its employees' gross income prior to April 2002 was because the company considered the payments to be "fringe benefits" that were not includable in its employees' salary.  Once LSI "realized" it could deduct the cost of the premiums if they were considered wages as opposed to fringe benefits, LSI "quickly recharacterized the premiums as salary (and therefore gross income to their employees)." (Id. at 8.)  Plaintiff claims that "LSI would have reported the premiums as gross income to their employees from December to April if they could have, or if they would have had the right tax advice at the time." (Id. at 9.)  Thus, Plaintiff concludes, LSI "never really wished to actively contribute to their employees' welfare, [and] their role must be seen as a neutral one." (Id.)

While employer neutrality is a critical component of plans
exempt from ERISA under the safe harbor regulations, <u>see</u>
<u>Thompson</u>, 95 F.3d at 436, the Court finds Plaintiff's argument on
this point unavailing.  Plaintiff puts forward no evidence to
support his claim that LSI's "recharacterization" of the premium
payments from fringe benefits to salary makes it "apparent that
LSI never really wished to actively contribute to their
employees' welfare" (Mem. Support Pl.'s Response Def.'s Mot.
Partial Summ. J. at 9.)  Nor does Plaintiff cite any authority
for the proposition that as a result of this intent, LSI's
payments prior to April 2002 should be viewed as constructive
payments by the employees.  The Court thus finds Plaintiff's
argument without merit.

Defendant's argument on the issue of employer contribution
is the converse of Plaintiff's.  Defendant concedes that
Plaintiff paid the Policy premiums after May 2, 2002, but
contends that LSI still "contributed to" the Policy—under the
meaning of ERISA—by giving its employees a raise "for the
express purpose of covering the  premium deductions." (Opp. Pl.'s
Mot. Partial Summ. J. and Mem. Support Def.'s Mot. Partial Summ.
J. ¶ 2; Reply Brief Support Def.'s Mot. Partial Summ. J. at 3.)

In support of its contribution-via-reimbursement argument,
Defendant relies on <u>Grimo v. Blue Cross & Blue Shield of Vt.</u>, 899
F. Supp. 196 (D. Vt. 1995).  The <u>Grimo</u> court held that the safe

-11-

harbor provision did not apply where the employer corporation deducted the cost of the insurance premiums from the corporation's earnings——money that otherwise would have gone to the employee shareholders——and then gave its employees "a bonus equal to the amount of premiums that had been paid <u>plus any taxes and costs that had been incurred in the process</u>."[8]  899 F.Supp. at 199 (emphasis added).  The court concluded that in this manner, the corporation "fully absorbed the health insurance costs of its shareholders . . . ." <u>Id.</u>

In the instant action, LSI gave its salaried employees an "increase in wages" starting in May 2002.  By including this "increase" in the employees' gross income (and listing it on their W-2s), however, the employees had to pay taxes on the extra amount.  There is nothing in the record that shows LSI reimbursed its employees for the additional taxes they incurred as a result of the increase in gross income.  Unlike in <u>Grimo</u>, then, LSI did not "fully absorb" all of the costs of the premium payments.  Rather, because LSI included the cost of the premiums on its employees' W-2 forms as gross income, the <u>employees</u> "contributed to" the cost of their long-term disability insurance, not LSI. See <u>B-T Dissolution, Inc. v. Provident Life and Accident Ins. Co.</u>, 175 F. Supp. 2d 978, 983 (S.D. Ohio 2001) (holding that the

---

[8] The opinion does not specify whether the bonus was taxable or listed as gross income on the shareholders' W-2 forms.

employer did not "contribute" to its employees' disability insurance policies under 29 C.F.R. § 2510.3-1(j)(1) because "the full amount of the premiums . . . was included on [the employees'] W-2 forms as gross income"). As in B-T Dissolution, LSI wrote the premium checks directly to Defendant, but those funds "necessarily first 'passed through'" its employees, who were required to report this amount as gross income and pay taxes on it. Id. Accordingly, the Court finds that the LSI employees, not LSI, contributed to the plan after April 2002.

Defendant argues, however, that because LSI paid the insurance premiums for the first several months, it "established" an ERISA plan under the plain language of the statute. That the plan was not "maintained" as an ERISA plan does not mean that ERISA no longer governs. As a general proposition, Defendant's argument is valid. See Nix v. United Health Care of Ala., Inc., 179 F.Supp.2d 1363, 1369 (M.D. Ala. 2001)(finding ERISA plan where employer set up insurance plan for both owners and employees, but later all employees ceased to work for employer, leaving only owners covered, because statute's plain meaning does not require that "plan must be established and continuously maintained as an ERISA plan"); Nat'l Bus. Ass'n Trust v. Morgan, 770 F.Supp. 1169, 1174-75 (W.D. Ky. 1991) (holding ERISA governed trust fund established by group of employers even though fund not maintained by employers under plain language of statute).

-13-

The Court notes that it is not entirely clear that LSI's past premium payments take it out of the safe harbor regulations. The Second Circuit has held that the use of the present tense in the plain language of 29 C.F.R. § 2510.3(j)(1)—"No contributions are made"—"strongly suggests that past payments do not forever preclude the application of the safe harbor provision." <u>Grimo v. Blue Cross/Blue Shield of Vt.</u>, 34 F.3d 148, 153 (2d Cir. 1994). The court concluded that "any employer contribution made in the past, no matter how long ago or under what circumstances, does not preclude application of 29 C.F.R. § 2510.3(j)(1) or demonstrate that an employer has 'established or maintained' the plan under 29 U.S.C. § 1002(1)." <u>Id.</u>

The evidence in this case is that employer contributions were made to the cost of the plan during the period generally contemporaneous with the relevant coverage in this case. Therefore, summary judgment must be granted on the first safe harbor criterion. The Court GRANTS Defendant's motion for summary judgment on the employer contribution criterion. Because a policy will be exempted under ERISA only if all of the safe harbor criteria are met, and because the first criterion is not met, the policy in this case is not excluded from ERISA coverage under the safe harbor regulations.

-14-

## 2. Voluntary Participation[9]

In order to qualify for safe harbor exemption, a plan must also be "completely voluntary." 29 C.F.R. § 2510.3-1(j)(2). Plaintiff submits that participation in the group long-term disability insurance coverage plan was "arguably voluntary" from December 2001 through April 2002 and that it is "unclear" whether participation became mandatory after April 2002. Defendant contends, however, that participation was mandatory at all times.

Participation in a plan is not completely voluntary when an employer guarantees a minimum participation rate at the time the policy contract is created and the rate of participation is subsequently met. Chamblin v. Reliance Standard Life Ins. Co., 168 F. Supp. 2d 1168, 1171 (N.D. Cal. 2001). The purpose of the "voluntariness" prong "is to identify programs sponsored by the employer and meant to be a benefit of employment." The Meadows v. Employers Health Ins., 826 F. Supp. 1225, 1229 (D. Ariz. 1993) (finding plan failed to satisfy "voluntariness" prong of safe harbor provision where employer agreed to 100% participation of all eligible employees for insurance coverage and 75% participation for medical coverage on group insurance application). By requiring 100% participation, an employer has "demonstrated its intent to establish an insurance plan for its

---

[9] The Court examines the second safe harbor criterion because it constitutes an additional ground for granting summary judgment on the issue for Defendant.

employees." Id. ("If the benefit was meant to be an option for employees there would be no participation requirement of 75% or 100%.")

Here, the evidence in the record plainly supports a finding that participation in LSI's long-term disability insurance plan was not completely voluntary. LSI's Group Insurance Preliminary Application, dated December 4, 2001, states that the total number of full-time employees was 51 and the total number of participating employees was also 51. (Opp. Pl.'s Mot. Partial Summ. J. and Mem. Support Def.'s Mot. Partial Summ. J., Ex. D ("Application") ¶ 10.) The Policy also notes that there are "Minimum Participation Requirements"[10] (Opp. Pl.'s Mot. Partial Summ. J. and Mem. Support Def.'s Mot. Partial Summ. J., Ex. C ("Group Long-Term Disability Insurance Policy"), at 10) and explains that the Policy will "end if the number or percentage of persons covered under the policy does not meet the Minimum Participation Requirements show in the Schedule" (id. at 28). Defendant's internal records show LSI requested that the long-term disability plan "be changed from non-contributory to 100% employee paid," effective May 1, 2002, and that LSI specified that "this will be a mandatory benefit, therefore [LSI] will

---

[10] Specifically, the Policy states "Minimum Participant Requirements: Number: 10; Percentage: 100%." (Group Long-Term Disability Insurance Policy, at 10.)

-16-

maintain 100% participation in the plan."[11]   (Opp. Pl. Mot.
Partial Summ. J. and Mem. Support Def.'s Mot. Partial Summ. J.,
Ex. B at 5.)   Finally, LSI's Chief Financial Officer, Lentz
Gatlin, wrote a letter to Defendant on April 24, 2002, in which
he stated that the long-term disability insurance plan had 100%
participation from all LSI employees and that the amended plan
would be "a mandatory benefit; therefore [LSI] will still have
100% participation in this program."   (2/24/02 Gatlin Letter.)

     To support his contention that the plan was completely
voluntary, Plaintiff refers the Court to a question left
unanswered in the Policy Application which asks "[i]s
participation in the Fortis coverage(s) mandatory?"   (Application
¶ 10.)   He also points to the affidavit of Cheryl Wood,
Defendant's Managing Team Risk Leader.   Wood states that "in
April 2002, LSI requested that Fortis amend the Policy to require
mandatory participation in coverage by its employees . . . ."
(Wood Aff. ¶ 4) (emphasis added).   Plaintiff argues that this
language demonstrates that participation was not voluntary until
April 2002, and furthermore, that participation never became
mandatory because Defendant never completed the requested
amendment.   See supra n.7.   Plaintiff also submitted to the Court

---

[11] As noted earlier, there is some evidence in record that this
amendment was never fully effected by Defendant.   See supra n.7.
Nevertheless, it is clear that participation in the plan was mandatory
prior to the amendment request and that it was LSI's intent to
maintain mandatory participation.

an affidavit in which he states that it was his understanding that participation in the plan voluntary.  (Pl. Aff. ¶ 3.)  The Court finds this evidence too speculative and inconclusive to create a genuine issue of material fact on the voluntariness requirement.

The Sixth Circuit "has long held that '[m]ere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden'" of demonstrating the existence of a genuine issue for trial.  <u>Bell v. Ohio State U.</u>, 351 F.3d 240, 253 (6th Cir. 2003) (quoting <u>Bryant v. Commw. of Ky.</u>, 490 F.2d 1273, 1275 (6th Cir. 1974)).  The conclusory allegations in Plaintiff's affidavit add nothing to the allegations in his complaint and therefore fail to create a triable issue of fact on the voluntariness prong of the safe harbor regulations.  <u>See</u> <u>Davidson v. United States</u>, 6 Fed. Appx. 317, 319 (6th Cir. Mar. 12, 2001).  Upon review of the record, the Court concludes that participation in the long-term disability insurance plan was not completely voluntary.  As with the first safe harbor criterion, because a plan must satisfy every requirement of the safe harbor provision to be exempt from ERISA regulation, the Court GRANTS summary judgment in favor of Defendant on the safe harbor exemption issue and DENIES summary judgment to the Plaintiff.[12]

---

[12] Based on the Court's ruling as to the first two safe harbor criteria, it is unnecessary to examine the parties' arguments under
(continued ...)

-18-

**B.   Existence of a Plan**

Even if a court determines that a plan is not exempt from ERISA coverage under the safe harbor regulations, it must still complete the second and third steps in the Sixth Circuit's three-part test set forth in <u>Thompson</u>. 95 F.3d at 437. Under the second <u>Thompson</u> factor, an ERISA plan exists if "a reasonable person can ascertain (1) the intended benefits, (2) the class of beneficiaries, (3) the source of financing, and (4) the procedures for receiving benefits." <u>Williams v. WCI Steel Co., Inc.</u>, 170 F.3d 598, 602 (6th Cir. 1999) (noting that the Sixth Circuit and every other Circuit has adopted this test for determination of whether plan exists under ERISA). Defendant argues that any reasonable person looking at the Policy could "easily ascertain" that it "provides long-term disability coverage for full-time LSI employees, that the premiums required by the Policy were paid by LSI, and the procedures for submitting claims under the Policy." (Opp. Pl.'s Mot. Partial Summ. J. and Mem. Support Def.'s Mot. Partial Summ. J at 6.)

The record before the Court supports a finding that a plan exists under ERISA in this case. The Policy explicitly states that it pays benefits "designed to partly replace income lost

---

(continued ...)
the third safe harbor requirement. As to the fourth requirement—that the employer does not receive consideration for its role in the program—there is no dispute that the safe harbor criterion is met.

during periods of disability that result from injury, sickness, or pregnancy." (Group Long-Term Disability Insurance Policy at 9.) It further specifies that employees will receive "60% of monthly pay subject to a maximum Schedule Amount of $6,000 per month . . . ." and explains other aspects of the benefits, including the qualifying period and monthly payment limit." (Id. at 10.) The "Eligible Class" is defined as each "full-time[13] employee of the policy holder . . . who is at active work . . . in the United States . . . ." (Id.) The Policy explains that the policyholder—specified as LSI on the cover page—must pay all premiums (id. at 29) and that Fortis is the source of the benefit payments (id. at 10). The procedure for receiving benefits is summarized in a section of the Policy titled "Filing a Claim" and "Proof of Loss." (Id. at 24.)

Plainly, a reasonable person could ascertain the particulars of LSI's group insurance policy. The benefits are not "amorphous" or "too ephemeral and contingent for [the court] to ascertain, what, if anything [LSI] intends an employee to receive." Williams, 170 F.3d at 603 (quoting Siemon v. AT&T Corp., 117 F.3d 1173, 1179 (10th Cir. 1997)). Nor are they "ad hoc . . . arrangements" such that a court could not determine whether an LSI employee was covered under the plan, what benefits

---

[13] Full-time employees are defined as those working at least thirty hours per week. (Id. at 3.)

might be due, or otherwise fashion appropriate relief.  See <u>Diak</u>
<u>v. Dwyer, Costello & Knox, P.C.</u>, 33 F.3d 809, 813 (7th Cir.
1994).

Plaintiff has not put forward any evidence to suggest that a
reasonable person would not be able to ascertain the pertinent
features of LSI's long-term disability insurance policy.  In
fact, Plaintiff did not address the second step in the Court's
inquiry at all.  Accordingly, Court concludes that there is no
genuine issue of material fact as to the existence of a "plan"
under ERISA and GRANTS summary judgment to Defendant on this
factor.

## C.   Established or Maintained

The final step in the Court's inquiry is to determine
whether LSI "established or maintained" the plan with an intent
to provide benefits to its employees.  An employer has
established or maintained an employment welfare benefit plan
where it "consulted an insurance agent, selected the terms of the
group policy it wished to purchase for its employees, completed
an application form for the policy, solicited enrollments from
its employees, collected money through payroll deductions, and
remitted premium checks to [the insurance company.]"  <u>Anderson v.</u>
<u>UNUM Provident Corp.</u>, 369 F.3d 1257, 1267-68 (11th Cir. 2004)
(quoting <u>Butero v. Royal Maccabees Life Ins. Co.</u>, 174 F.3d 1207,
1214 (11th Cir. 1999)); <u>see also</u> <u>McDonald v. Provident Indem.</u>

-21-

Life Ins. Co., 60 F.3d 234, 236 (5th Cir. 1995) (finding employer
"established or maintained" the plan by purchasing insurance,
selecting benefits, identifying employee-participants, and
distributing enrollment and claim forms).

Defendant claims that LSI "established or maintained" the
long-term disability insurance plan through various means.
According to Defendant, LSI procured the insurance coverage for
its employees by submitting an application, paying $853.05 to be
applied toward the first premium due, and selecting the extent
and scope of coverage, e.g., deciding that its current employees
would be immediately eligible for coverage but that new employees
must wait one month.  (See Application ¶¶ 8,9,10 )

Plaintiff argues, however, that LSI did nothing to establish
or maintain the Policy.  In support, Plaintiff relies primarily
on the affidavit of Lentz Gatlin, LSI's CFO.  According to
Gatlin, the Policy was a "standard long-term disability policy"
and neither LSI nor its employees determined the scope of
coverage.  LSI did not negotiate the terms of the Policy, and the
book that LSI employees received on the Policy was prepared by
Defendant, not LSI. (Gatlin Aff. ¶¶ 9,10.)

Having reviewed the record and the parties' contentions, the
Court concludes that a genuine issue of material fact exists as
to whether LSI "endorsed or maintained" the Policy under the
meaning of ERISA.  The Court notes, in particular, that LSI is

-22-

not the designated plan administrator, and the record reveals no
evidence that LSI took part in the plan's day-to-day
administration.  In addition, the parties have put forward
conflicting accounts of LSI's role in negotiating the terms and
benefits of the policy.  Gatlin states that "[n]either LSI nor
its employees determined the scope of coverage under the policy
[and] LSI did not negotiate the terms of the policy."  (Gatlin
Aff. ¶ 9.)  Fortis's Managing Team Risk Leader, on the other
hand, states that LSI selected the scope of the plan's coverage
and its eligibility requirements.  (Wood Aff. ¶ 3.)

     Other courts that have found that an employer "established
or maintained" a plan within the scope of ERISA have based this
conclusion on a much stronger factual record than the evidence
before this Court.  See, e.g., Grimo v. Blue Cross and Blue
Shield of Vt., 899 F. Supp. 196, 205 (D. Vt. 1995) (finding
employer "established or maintained" an ERISA plan in part on
evidence of employer's extensive administrative responsibilities,
including distributing claim forms, submitting employee insurance
cards, selecting deductible amounts, and engaging in "substantial
bookkeeping and records management to maintain the operation of
the payment system").  Here, the evidence in the record appears
to be in material dispute as to whether LSI "established or
maintained" the Policy with an intent to provide benefits to its
employees as construed under ERISA.  The Court concludes that

-23-

Plaintiff has set forth sufficient evidence to create a genuine issue of material fact on this question.  Accordingly, the Court DENIES Defendant's motion for summary judgment as to whether the plan is governed by ERISA and accordingly, on Defendant's ERISA preemption claim.

## IV.  Conclusion

For the reasons set forth above, the Court DENIES summary judgment on Plaintiff's claim that the safe harbor regulations exempt the plan from ERISA and GRANTS summary judgment on this issue in Defendant's favor.  The Court also GRANTS Defendant's motion for summary judgment as to whether a "plan" exists under the meaning of ERISA.  Finally, the Court DENIES Defendant's motion for summary judgment as to whether LSI "established or maintained" the plan with an intent to provide benefits to its employees.  Accordingly, the Court DENIES Defendant's motion for summary judgment as to whether Plaintiff's state law claims are preemted by ERISA.[14]

So ORDERED this _30_ day of September, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[14] Because the Court denies summary judgment on the issues of ERISA governance and state law claim preemption, it declines to address Plaintiff's savings clause argument at this time.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 46 in case 2:04-CV-02714 was distributed by fax, mail, or direct printing on October 3, 2005 to the parties listed.

---

S. Russell Headrick
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Memphis
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Leigh McDaniel Chiles
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Memphis
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Tim Edwards
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Ginger L. Clem
HUSCH & EPPENBERGER, LLC.
200 Jefferson Ave.
Ste. 1450
Memphis, TN 38103

Jimmy Moore
CIRCUIT COURT, 30TH JUDICIAL DISTRICT
140 Adams Ave.
Rm. 224
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT